USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/11/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAFAEL PEREZ,
                        Plaintiff,

         -against-

CITY OF NEW YORK, et al.,
                        Defendants.
------------------------------------------------------------X

14 Civ. 07502 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiff Rafael Perez brings this action pro se against the City of New York and two correctional officers pursuant to 42 U.S.C. § 1983.[1] Perez alleges that, while he was detained for three days at an intake pen in the Anna M. Kross Center ("AMKC") on Rikers Island, Defendants violated his constitutional rights under the First, Eighth and Fourteenth Amendments. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Because it is clear from the face of the Complaint that Plaintiff has failed to exhaust the administrative remedies available to him, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e et seq., Defendants' motion is granted.

**I.    BACKGROUND**

For purposes of deciding the motion to dismiss, the factual allegations pleaded in the Complaint are assumed to be true.

On August 12, 2014, Plaintiff was brought into intake at AMKC while he waited for his housing assignment. The intake pen is a temporary holding area, and inmates are required to be transferred out within 12 hours. Officer Brown, who was in charge of housing, intentionally

---

[1] By Order dated November 10, 2014, Defendant "AMKC C-95" was dismissed because it may not be sued under § 1983 and Defendant "N.Y.C.D.O.C." was dismissed and replaced with Defendant City of New York because an agency of the City of New York may not be sued except as otherwise provided by law and no exception applies.

misplaced the housing cards.  As a result, on August 13, 2014, Plaintiff went to court without a shower or use of a functioning bathroom for more than 24 hours.  After his court appearance, Plaintiff was placed back in the intake pen with at least 35 other inmates without access to a working toilet, shower, bed, medication, recreation, personal property, telephone or law library through August 14, 2014.  Captain Shorn was aware of the situation in intake and ignored it.  Due to this confinement, Plaintiff contracted fungus and ringworms.

Plaintiff filed a grievance about the incident.  On an unspecified date, he filed a grievance at AMKC, but he did not receive a response.  On August 13, 2014, Plaintiff informed Captain Shorn about the situation in the intake area.  On another unspecified date, Plaintiff contacted the Office of Compliance.  Plaintiff's opposition to Defendants' motion to dismiss also asserts that he filed complaints with the Office of the Inspector General and "311 complaint."[2]

Plaintiff's signature on the Complaint is dated August 22, 2014, and the Complaint was docketed on September 16, 2014.  Defendants filed a motion to dismiss on February 20, 2015.  By Order dated February 23, 2015, Plaintiff's response to Defendants' motion, if any, was due by March 20, 2015.  On March 17, 2015, after Plaintiff failed to appear at a scheduled conference, Plaintiff's time to respond to the motion to dismiss was extended sua sponte to April 3, 2015, and Plaintiff was warned that failure to respond could result in dismissal of his case.  During a telephone conference held on April 7, 2015, the instant motion was deemed fully submitted because Plaintiff had not filed a response.  On April 14, 2015, however, the Court received a submission from Plaintiff that is construed as an opposition to Defendants' motion to dismiss and is considered on the merits.

---

[2]  During a conference held on April 7, 2015, Plaintiff stated that he contacted the Office of the Inspector General and New York City's 311 information service to lodge complaints about his confinement at the AMKC intake area, but he received no response.

**LEGAL STANDARD**

    **A.**    **Motion to Dismiss**

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In construing complaints by plaintiffs proceeding pro se, courts "apply[] a more flexible standard to evaluate their sufficiency than [they] would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"). Thus, a court is obligated to construe pro se pleadings with "'special solicitude,' interpreting the complaint to raise the 'strongest [claims] that [it] suggest[s].'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (alterations in original) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006)).

    **B.**    **Exhaustion**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA's 'exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong.'" *Hill*, 657 F.3d at 124 (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

"In order to exhaust a claim, prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam) (internal quotation marks omitted). These rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. Failure to exhaust is an affirmative defense, and a defendant must establish "that an administrative remedy was 'available' in the sense that a grievance policy or procedure existed and covered the dispute at hand. . . . by reference to a 'legally sufficient source.'" *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, No. 14-2472-cv, __ F.3d __, 2015 WL 3461791, at *4, *6 (2d Cir. June 2, 2015) (citation omitted). "[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Nevertheless, dismissal is appropriate if it is clear from the face of the Complaint that Plaintiff failed to exhaust administrative remedies. *See id.* at 215-16.

## II.  DISCUSSION

As an initial matter, Defendants have shown that a grievance policy or procedure existed and covered the dispute at hand by submitting the New York City Department of Correction's Inmate Grievance and Request Program ("IGRP") of which this Court takes judicial notice as a matter of public record.[3] *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (affirming judicial notice of New York Correction Rules and Regulations); *Spurgeon v. Wettenstein*, No. 13 Civ. 8117, 2015 WL 1408874, *2 n.1 (S.D.N.Y. Mar. 26, 2015) (taking judicial notice of IGRP). Inmates who wish to challenge their conditions of confinement at AMKC, such as those at issue

---

[3]  *Available at* http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_ Grievance_Request_Program.pdf

here, are required to comply with the IGRP.

      The allegations in the Complaint demonstrate that Plaintiff did not exhaust the administrative process. The IGRP lays out a four-step grievance process. First, an inmate submits an initial grievance to the IGRP staff, and the IGRP staff has five business days from receipt of the form to resolve the issue informally. Second, "[i]f the inmate is not satisfied with the informal resolution that IGRP staff provides," the inmate may request a formal hearing in front of the Inmate Grievance Resolution Committee ("IGRC"). Third, "the inmate may appeal the [IGRC's] disposition to the facility's Commanding Officer." Finally, the inmate may appeal "the Commanding Officer's disposition to the Central Office Review Committee" (the "CORC"). Before the CORC renders a decision, the New York City Board of Correction "shall be afforded five business days in which to offer any opinion or advice it may wish [to the CORC] with regard to the proper resolution of the appeal of the grievance or request." "The CORC's disposition shall constitute the Department's final decision on the inmate's request or grievance." "In the event that the inmate does not receive a timely disposition at any stage of the IGRP process, the inmate may submit a request for an appeal (to proceed to the next step of the IGRP process) . . . ." The inmate must take each of the four steps to exhaust the administrative grievance process. *Tyler v. Argo*, No. 14 Civ. 2049, 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014).

      The Complaint shows that Plaintiff failed to exhaust administrative remedies before commencing this action. The Complaint alleges that Plaintiff filed a grievance at AMKC, which is the first step of the IGRP's administrative procedure. Although the Complaint asserts that prison authorities did not respond to his grievance, the IGRP provides a right to appeal when an inmate does not receive a timely response to his grievance. Plaintiff was obligated to appeal and comply with the IGRP's procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

The timing of the Complaint also shows that the grievance process could not have been completed when Plaintiff commenced this action. The Complaint was signed on August 22, 2014 -- just one week after the events in question occurred. The IGRP gives the IGRP staff, the first level in the grievance process, five business days from the date the grievance was received to respond. Assuming that Plaintiff filed his grievance immediately on August 14, 2015, only six business days had elapsed before he commenced this action. When the IGRP staff failed to respond on the fifth business day, Plaintiff could not have proceeded through the next three steps of the administrative appeals process in less than one day.[4]

Plaintiff's allegation that he advised others of his grievance does not excuse his failure to exhaust the administrative process specified in the IGRP. An inmate "must procedurally exhaust his claims 'by compl[ying] with the system's critical procedural rules.'" *Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (quoting *Woodford*, 548 U.S. at 82). "[A]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." *Id.* at 44 (alterations in original) (internal citation and quotation marks omitted). Because notices to Captain Shorn, the Office of Compliance, the Office of the Inspector General, and New York City's 311 service about a grievance are not steps in the required IGRP administrative process, Plaintiff at best has performed only the first step of the multistep IGRP process. Accordingly, these steps do not excuse Plaintiff's failure to exhaust.

Plaintiff has not pleaded any additional facts that would excuse his failure to exhaust administrative remedies. The Second Circuit has recognized three categories of "caveats" to the exhaustion requirement, where "(1) administrative remedies are not available to the prisoner;

---

[4]   In fact, Plaintiff stated at the April 7, 2015 conference that, when he did not receive a response to his grievance form, he did not proceed to the next level of the administrative appeals process. Although Plaintiff's statements at this conference are not relied upon for this motion to dismiss, they provide further support that Plaintiff failed to exhaust.

6

(2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).  The Second Circuit has questioned whether the estoppel or special circumstances exceptions survive the Supreme Court's holding in *Woodford* concerning proper exhaustion, but declined to reach the issue. *Amador v. Andrews*, 655 F.3d 89, 102-03 (2d Cir. 2011).

Even assuming the continued viability of the exceptions to the exhaustion doctrine, none of them apply.  Consequently, the Complaint must be dismissed for failure to exhaust.  Plaintiff timely filed his grievance, which indicates that the procedure was available to him.  Nothing in the Complaint suggests Defendants or any other official prevented Plaintiff from filing a grievance or continuing with his administrative appeals.  Defendants also timely raised their exhaustion defense in their motion to dismiss, which Plaintiff has opposed.  Finally, the Complaint does not indicate that special circumstances exist that would excuse Plaintiff's failure to comply with the IGRP.  Accordingly, Plaintiff's Complaint must be dismissed for failure to exhaust.

The dismissal, however, is without prejudice.  Plaintiff has informed the Court of additional facts that are not in the Complaint and that might give rise to a claim after Plaintiff exhausts his administrative remedies.  *See Nielson v. Rabin*, 746 F.3d 58, 64 (2d Cir. 2014) (reversing district court's denial of leave to amend because if the "complaint were amended to include the allegations in [plaintiff's] opposition to the motion to dismiss, the complaint would sufficiently set forth [a claim]").  At a conference on April 7, 2015, Plaintiff asserted that the

bathroom in the intake pen "was overfull and []flooded out" and that he was forced to sleep on the floor next to the bathroom.  In his opposition, Plaintiff stated that he was denied "medications to prevent [him] from having seizures."  These allegations suggest that Plaintiff may be able to state a claim.  Accordingly, Plaintiff may file a new lawsuit asserting these claims after he completes the additional steps in the IGRP grievance procedures identified above.

Plaintiff is advised that, because he did not exhaust his administrative remedies, the Complaint is dismissed without reaching the merits of his claims for violations of the First, Eighth and Fourteenth Amendments.  Plaintiff is warned that if he chooses to file a new lawsuit but fails to allege in the Complaint the necessary facts to support his claims, his action may be dismissed with prejudice and he would be barred from refiling it.

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiff's claims are dismissed without prejudice.  The Clerk of Court is directed to close Docket Number 17 and terminate this case.  The Clerk of Court is also directed to mail a copy of this Opinion and Order to the pro se Plaintiff.

SO ORDERED.

Dated: June 11, 2015
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**